# PRESIDENT, DIRECTORS, &c. OF THE PACIFIC BANK
## *vs.* AARON MITCHELL.

*It seems* that the drawer of a bill of exchange payable to his own order, and by him indorsed, is a competent witness in a suit brought by the indorsee against the acceptor.

When the holder of a bill of exchange, accepted for the accommodation of the drawer, sends it to a bank for collection, and the bank, when the bill comes to maturity, passes the amount thereof to the credit of the holder, this is not such a payment as discharges the acceptor; but the bank succeeds to the rights of the holder, and may maintain an action on the bill against the acceptor.

THIS was an action of assumpsit against the acceptor of three bills of exchange. Trial in the county of Nantucket, before *Shaw*, C. J. whose report thereof was as follows:

The plaintiffs gave in evidence a bill, dated September 19th 1842, drawn on the defendant by James Athearn, for $1000, payable, in five months from date, to said Athearn's own order, and by him indorsed in blank, and accepted by the defendant: Also a similar bill payable in six months from date, similarly drawn, indorsed and accepted: Also a bill dated May 19th 1842, for $1000, payable in six months from date, drawn and accepted like the other two, and indorsed by said Athearn, and by Philip Marett, cashier of the New England Bank. All the signatures to these bills were admitted.

The defence stated was, that the first two bills were accepted by the defendant for the accommodation of Athearn, the drawer; that this was known to the plaintiffs; and that they gave time to the drawer, and thus discharged the defendant: That, as to the third bill, the plaintiffs received it of the New England Bank, for collection; that it was collected at maturity and paid; and that the plaintiffs had no interest in it.

To establish the defence, the defendant called James Athearn, the drawer of the bills, as a witness, who was objected to by the plaintiffs, on the ground of interest; but he was admitted as competent, subject to the opinion of the whole court. No other evidence of his interest was offered than that arising out of his relation to these bills, and his liability upon

them.   He testified that he had been president of the Pacific
Bank, and was so in January 1843 ; that the first bill was
drawn by him ; that he had no funds in the defendant's
hands, and that it was accommodation paper; that the same
was true of the second and third bills, and that they were
accepted for his accommodation ; that he could not tell what
was done with the first and second bills, when they respec-
tively fell due, in January or February ; that he did nothing
himself; that he had made provision for his liabilities, gen-
erally, to the bank, by various written transfers of property.
[Notice was given to the plaintiffs to produce these transfers,
but they were not produced.]   The witness further testified,
that some transfers were made in December 1842, and some
earlier; that all of them were taken as collateral security for
his liabilities; that he could not say what proportion the
security bore to the liabilities, but that he thought, at the
time, the securities were about equal to his liabilities; that
in May 1843, when this suit was brought, the security ex-
ceeded the liabilities ; that he thought the plaintiffs had con-
verted some of his property, which they held as security,
into money, viz. the ship Zone and cargo, one third of the
ship Atlantic and cargo, and about $10·000 of other securities :
That the third bill (payable in November 1842) was not dis-
counted by the plaintiffs, but at Boston, and was the property
of the New England Bank, and came from that bank to the
Pacific Bank, for collection ; that he did not know whether
it ever went to the credit of the New England Bank or not,
but that it ought to have so gone, because it was their prop-
erty when it matured ; that he considered this bill as among
the liabilities for which he transferred his property for
security.

   The witness also testified that when the first bill (dated
September 19th 1842) became due, he thought he was not
president of the bank.

   The defendant then proposed to give evidence, that notice
was given to William Mitchell, the plaintiffs' cashier, that the
defendant's acceptances were given for the accommodation of

Athearn, the drawer, as proof of notice to the corporation, (the plaintiffs,) and thus to show that the acceptor (the defendant) stood in the relation of surety to the drawer, and that the arrangement of the bank (the plaintiffs) discharged the acceptor. This evidence, though objected to by the plaintiffs, was admitted, subject to the opinion of the whole court. The same witness then testified that when the third bill, belonging to the New England Bank, became due, the cashier said to him, " I suppose this is your paper, or for you to take care of," and that the witness said, " it is ; " that the witness did not know what was done with the bill; that he did not know that the cashier knew that the two other bills were accommodation drafts when they were discounted, nor did he know what was done when those bills came to maturity ; that when they were discounted, they were not taken as substitutes for like drafts in the bank.

The witness was permitted to testify (the plaintiffs objecting) that the bills were not discounted by a board of directors. He also testified that he first made transfers to the plaintiffs, to secure his liabilities to them, in August 1842 ; and that William Mitchell, the plaintiffs' cashier, kept the books of the bank.

On cross-examination, the witness was asked if he had not accepted similar bills for the defendant. This question was objected to, but it was permitted to be put. The witness answered, that he had occasionally accepted similar drafts for the defendant, but not of exactly corresponding dates and amounts, but did not know that he did so after the defendant accepted the bills now in suit ; that he thought there must have been some understanding between him and the defendant, though he was not certain ; that there was no understanding or agreement that they should accept for each other ; and that he could hardly say it was their practice to do so, though it had frequently been done ; that he thought he had accepted more for the defendant than the defendant had for him ; that he (the witness) procured the three bills to be discounted, one at the New England Bank, in Boston, and the

others by the Pacific Bank, of which he was then president; that it was done, at the latter bank, with the knowledge of the cashier, and that the amount was paid to the witness, or passed to his credit ; that he often passed paper in the same way, having had the principal management of the bank; that he could not say whether his conversation with Mitchell (the cashier) was on the day the bill became due, but that it was either on that day or soon after ; that the bills were for him (the witness) to take care of as indorser.

The witness further stated, on the cross-examination, that his first transfer of property to the bank, in August 1842, was known to the cashier, but not to the directors, and that he (the witness) first knew that the directors had knowledge that the transfer had been made, about the 1st of December 1842 ; that the other transfer, made in December 1842, was made with the knowledge of the directors.

Inquiry was made of the witness, by the plaintiffs' counsel, as to the contents of the transfers ; but the judge ruled, that as the plaintiffs had declined to produce the papers containing the transfers, the witness could not be interrogated by them respecting the terms on which the transfers were made.

The witness, on reëxamination by the defendant, said that the value of the Zone and cargo was $37·000, and the value of one third of the Atlantic and cargo was $6000.

It was conceded that the amount of the bill discounted by the New England Bank was passed to the credit of that bank, in account, by the plaintiffs, soon after it came to maturity, and before this action was brought.

Upon this state of the evidence, a verdict was taken for the plaintiffs, by consent, for the sum of $3083·51, the amount of the three bills, with interest, subject to the opinion of the whole court ; the court to draw such inferences from the evidence, so far as it is competent, as a jury ought to draw ; the verdict to stand, or be reversed or reduced, and judgment thereon, according to the opinion of the whole court upon the questions of law reserved.

The argument was had at the last March term.

*Colby,* for the plaintiffs. These were not accommodation acceptances. They were on sufficient consideration, namely, Athearn's acceptances for the defendant. But if they were accommodation acceptances, the plaintiffs had no notice that they were such. The knowledge of a director is not notice to the bank. *Commercial Bank* v. *Cunningham,* 24 Pick. 276. And if the plaintiffs had such knowledge, it would be no bar to this action. Story on Bills, §§ 191, 192, 253. *Fall River Union Bank* v. *Willard,* 5 Met. 216. Nor does the taking of security from the drawer, or the giving further time to him, discharge the acceptor. Story on Bills, § 268. 3 Kent Com. (1st ed.) 56, 57. *White* v. *Hopkins,* 3 Watts & Serg. 99.

*Coffin,* for the defendant. The defendant must be regarded as an acceptor for Athearn's accommodation, and the plaintiffs must be held to have had notice of this fact, inasmuch as it was known to their president and cashier. The defendant was like a surety, and he was discharged by the giving of time to the drawer. *Laxton* v. *Peat,* 2 Campb. 185. *Collott* v. *Haigh,* 3 Campb. 281. The defendant is discharged by the taking of security from the drawer by the plaintiffs. *Bradford* v. *Hubbard,* 8 Pick. 155. See also *Boston Hat Manufactory* v. *Messinger,* 2 Pick. 223. *Baker* v. *Briggs,* 8 Pick. 122.

The plaintiffs have made the bill their own, which was discounted by the New England Bank, by crediting it to that bank; and the legal p.esumption is, that it was paid from funds in the plaintiffs' hands.

HUBBARD, J. This case came before the court upon a report of the evidence by the presiding judge, with an agreement that the court might draw such inferences from the evidence as a jury might be warranted in drawing. Upon the evidence thus reported, it was argued that the two bills, drawn September 19th 1842, were accepted for the accommodation of the drawer; that this was known to the plaintiffs, the holders, who gave time to the drawer; and that the giving of time discharged the acceptor, who is to be considered the same as a surety.

Athearn, the witness offered by the defendant, was objected to as interested, being the drawer and indorser of the bills; but the objection was overruled. As this objection is not now pressed, we are not called upon to express an opinion upon it; but no other interest being shown, but that of being a party to the bill, we think the case is probably not distinguishable, in principle, from the case of *Thayer* v. *Crossman*, 1 Met. 416.

It is proved by the testimony of the drawer, that the acceptances declared upon were made for the accommodation of the drawer, who was the president of the bank. But it does not appear that this fact was communicated to the directors, or that the cashier had any certain knowledge of it. And though we incline to the opinion, that the acts of the president, in procuring a discount for himself, with the knowledge of the cashier, is not the act of the directors, so as to bind the plaintiffs with constructive knowledge, yet as the evidence does not sustain the point raised, namely, that time was given by the plaintiffs on receiving the security from the drawer, we think the fact, whether the directors knew that the drafts were accommodation paper or not, is unimportant; because accommodation acceptors stand in the same relation to *bonâ fide* holders, as acceptors for value.

In respect to the bill bearing date May 19th 1842, and which was discounted at the New England Bank, and by that bank remitted to the plaintiffs for collection, we are of opinion that the passing of the amount of it to the credit of the New England Bank by the plaintiffs, when it came to maturity, was not such a payment of the bill as to discharge the acceptor. The plaintiffs succeeded to the rights of the New England Bank, and became *bonâ fide* holders of the bill.

Another point was urged upon the court, viz. that the bills were paid by the assignment of property made by the drawer for the payment of his liabilities to the bank. But this is a question depending upon facts which we have not now the means of ascertaining. The transfers of property appear to have been made generally, without the drawer's specifying to

what liabilities they should be applied ; and we are ignorant whether any appropriation was made by the directors or not It would seem, as the case now stands, that the assets should be applied, *pro ratâ*, to the discharge of all the liabilities of the drawer ; but this point we cannot now determine. We are of opinion, therefore, that the verdict should be set aside, and a new trial granted, in order to ascertain whether the proceeds of the property transferred to the plaintiffs is applicable, in whole or in part, to the demands sued in this action, and also what amount had been realized from them, at the time of the commencement of the action. And the new trial is to be limited to these inquiries.